Hector ANGUIANO, Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. Civ.A. SA–03–CA–1290–XR.**

United States District Court, W.D. Texas, San Antonio Division.

Jan. 3, 2005.

Clinton M. Glenny, II, Glenny & Brylak Financial Center Northwest, San Antonio, TX, for Plaintiff.

Larry F. York, Scott King Field, York, Keller and Field, L.L.P., Austin, TX, for Defendant.

### ORDER

RODRIGUEZ, District Judge.

■ On this date, the Court considered Plaintiff's Opposed Motion for Leave to Late Designate Experts (docket no. 21), filed December 6, and Defendant's Response, filed December 20. Plaintiff seeks leave to file his Second Designation of Experts beyond the deadline set forth in the Court's scheduling order. After careful consideration, the Court will GRANT the motion (docket no. 21).

This case stems from Defendant Life Insurance Company of North America's (LINA) denial of accidental death and dismemberment benefits to Plaintiff, who was the sole beneficiary under a policy issued to his mother. Plaintiff's mother, Yolanda Anguiano, died of a cocaine overdose, and LINA denied the claim based on an exclusion for "intentionally self-inflicted injuries." Prior to denying Plaintiff's claim, LINA consulted an independent forensic pathologist, Dr. James Lewis, who concluded that Yolanda's death was a suicide. Defendant provided Dr.

Lewis's opinion to Plaintiff at the time his claim was denied and again with LINA' initial disclosures in this case.

Under the Court's February 26, 2004 scheduling order, Plaintiff was required to serve his designation of testifying experts pursuant to Rule 26(a)(2)(B) by August 27, 2004. Plaintiff designated Yolanda's treating physician, the Bexar County medical examiner, and James Garriott, a forensic toxicologist, who concluded that Yolanda's death was accidental rather than intentional. The scheduling order deadline for LINA to file its Rule 26 disclosures was September 24. Plaintiff's motion states that he received Defendant's designation on October 4, and that Defendant designated Dr. Alan Hopewell in addition to Dr. Lewis and Dr. Guy Purnell, a forensic toxicologist. Defendant describes Dr. Hopewell as a licensed clinical neuropsychologist who is expected to testify concerning his evaluation of the facts and circumstances surrounding Yolanda's death. Specifically, Defendant stated that Hopewell would create a "psychological autopsy" and "is expected to testify that Ms. Anguiano's cocaine overdose and resulting death was intentional conduct." Further, Hopewell is expected to testify "concerning the neurological effects of cocaine, as well as Ms. Anguiano's mental, emotional, and physical condition during the time leading up to her death."

Plaintiff's motion states that, at no time during the initial investigation and subsequent denial of insurance benefits did LINA hire a psychologist to perform a "psychological autopsy" and Defendant's designation of experts was the first time Plaintiff became aware of this new testimony. Plaintiff states that he hired a forensic toxicologist upon filing this case, and that because Defendant had relied solely upon forensic toxicologists and pathologists before the designation, he could not anticipate that Defendant would hire a psychologist to perform a "psychological autopsy." Plaintiff states that, under the scheduling order, he had only fifteen days to designate a rebuttal expert, but that he had difficulty finding an expert to perform a "psychological autopsy." Accordingly, Plaintiff asserts, he could not locate an expert until November 19. Plaintiff eventually located Dr. Alan Berman, and provided him with the pertinent documents. Plaintiff then filed this motion for leave to designate Dr. Berman late, stating that he will provide a report when available. Plaintiff states that Dr. Berman's testimony is crucial because Dr. Hopewell is the only psychologist who has rendered an opinion that Yolanda's death was a suicide.

██ A party who, without substantial justification, fails to disclose information required by Rule 26(a) is not, unless such failure is harmless, permitted to use as evidence at a trial any witness or information not so disclosed. FED. R. CIV. P. 37(c)(1). In lieu of exclusion, a court may impose other appropriate sanctions, such as requiring the payment of attorney's fees. *Id.* The Fifth Circuit has adopted a four-part test to determine whether exclusion is an appropriate sanction: (1) the explanation by the party who failed to comply with the scheduling order; (2) the prejudice to the party opposing the designation; (3) the possibility of curing any prejudice with a continuance; and (4) the importance of the witness's testimony. *Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1000 (5th Cir.1998).

As noted, Plaintiff argues that he did not know he would require a forensic psychologist or "suicidologist" until Defendant designated Dr. Hopewell in October because both sides had been utilizing only forensic toxicologists and forensic pathologists until that time. Plaintiff has designated James Garriott, a forensic toxicologist, who is expected to testify that Yolanda's death was accidental. LINA argues that Plaintiff could not have been surprised by LINA's designation of a forensic psychologist because "a core issue in this case is Yolanda Anguiano's state of mind at the time of her death." LINA contends that this has been an issue since its denial of the claim and, given the opinion of Dr. Garriott, Plaintiff does not need an additional expert to testify that her death was not suicide. LINA further argues that Plaintiff had "ample" opportunity under the scheduling order to locate a rebuttal expert and Plaintiff's contention that he simply could not find one is insufficient to justify a late desig-

nation. The Court finds that Plaintiff's explanation that he did not know of the need to designate a forensic psychologist until Defendant's designation is reasonable. Both sides had relied on forensic toxicologists and forensic pathologists to address the issue of whether the death was accidental or intentional. LINA's designation of Dr. Hopewell and his testimony regarding his "psychological autopsy" was the first designation of an expert who would attempt to retroactively reconstruct Yolanda's state of mind at the time of her death.

However, whether Plaintiff had sufficient time to find and designate an expert and whether Plaintiff has offered a good explanation for missing the scheduling order deadline are more difficult questions. Plaintiff asserts that the number of experts performing "psychological autopsies" is limited.[1] The Court recognizes that it often takes time to locate and consult with an expert before designating the expert. Nevertheless, the Court reminds Plaintiff that is always more prudent to move for an extension *before* the expiration of the deadline rather than after. *See* FED. R. CIV. P. 6(b). Thus, although the Court accepts Plaintiff's explanation that he was not aware of the need for a psychological expert to perform a "psychological autopsy" until Defendant filed its designation, Plaintiff was aware of the need before the deadline expired and therefore should have moved for an extension of time before the expiration of the deadline under the scheduling order rather than waiting until after the deadline.

With regard to the prejudice to LINA, LINA asserts that it would be prejudiced if Plaintiff's late designation is allowed because Dr. Hopewell had no opportunity to review Dr. Berman's findings and opinions prior to writing his report. However, that will usually be true with rebuttal-only experts and would be true whether the rebuttal expert designation is timely or untimely, and thus the Court finds this argument unconvincing. LINA also complains that the designation does not include his opinions or conclusions and it is unclear when this information will

become available. Further, LINA argues, once it receives the report, it will have to decide whether it needs a rebuttal expert of its own because Dr. Berman purports to be "suicidologist," whereas Dr. Hopewell is not a "suicidologist." Thus, LINA contends it may have to submit a rebuttal designation of a "suicidologist," resulting in delay of discovery and possibly trial as well as additional expense. Or, at a minimum, argues LINA, Dr. Hopewell will have to amend his report and be re-deposed once Dr. Berman gives his opinion, resulting in additional expense.

Based on Plaintiff's submitted designation, Dr. Berman is expected to testify on exactly the same issues that LINA has stated it expects Dr. Hopewell to testify, thus the fact that Dr. Berman refers to himself as a "suicidologist" while Dr. Hopewell does not seems to be of no consequence. At this point, LINA's speculation that it may need to hire a rebuttal expert or amend Dr. Hopewell's report and re-depose him is just that, speculation. Thus, the Court finds that LINA has not shown that it has or will suffer prejudice from the late designation.

With regard to the importance of the testimony, the Court agrees with Plaintiff that it is important that Plaintiff submit psychological testimony to rebut Defendant's psychological expert testimony. Although Plaintiff has Dr. Garriott's testimony that the death was an accident, and LINA argues that additional psychological testimony is therefore not needed, LINA has the testimony of both Dr. Lewis and Dr. Hopewell regarding Yolanda Anguiano's state of mind. Because Dr. Hopewell will purports to reconstruct the decedent's state of mind from a psychological perspective, Plaintiff should be permitted to counter with like testimony.

Last, the Court must consider the possibility of curing any prejudice with a continuance. As noted, the only prejudice identified by LINA thus far is highly speculative. Moreover, the current trial date is April 4, 2005, and thus this situation does not involve any unfair surprise shortly before trial. LINA itself "cannot deny that a continuance

---

1. Surprisingly, the Court found fifty three law review articles in the "JLR" database on Westlaw by typing the term "psychological autopsy" and found ten cases involving the use of such autopsies in the "ALLFEDS" database.

of the current April 4, 2005 trial setting could mitigate the potential prejudice against LINA of the late designation, but it will not reduce the additional costs LINA will incur."

Considering the four factors, the Court concludes that Plaintiff should be allowed to designate Dr. Berman late. Plaintiff is directed to provide an expert report to Defendant as soon as possible, but no later than **January 28, 2005.**

Defendant moves the Court (in the event the late designation is permitted) to "provide it with the accommodations allowed under the rules in terms of a continuance or additional relief justified under the circumstances," citing this Court's order in *Lowery v. Spa Crafters* in which the Court awarded reasonable expenses for the cost of a new exam and amended report. With regard to a continuance, the Court finds that a continuance of the current scheduling order deadlines is warranted. The current deadline for the close of discovery was December 17 and the dispositive motion deadline is January 28, 2005. The Court VACATES all remaining deadlines and ORDERS the parties to confer within 10 days of Defendant receiving Dr. Berman's report. At that time, the parties are ordered to determine whether Dr. Hopewell will be required to amend his report and/or be re-deposed and to determine how much additional time is needed for discovery.[2] The parties are further ORDERED to submit a proposed scheduling order for the discovery deadline, dispositive motions, pretrial conference, pretrial submissions, and trial within five days of their conference. LINA's request for other relief including reasonable expenses is denied without prejudice to filing a subsequent motion if LINA can show actual rather than speculative prejudice as a result of Plaintiff's late designation.

---

**2.** Although the Court has vacated the discovery deadline, to minimize any additional expense, the Court expects any additional discovery to be limited to that relating to Dr. Berman and Dr. Hopewell and their anticipated testimony.